No. 71–5729. LIPPITT v. CIPOLLONE ET AL.

MR. JUSTICE DOUGLAS, dissenting.

In the 1970 Ohio primary election, appellant voted as a Republican and was a candidate for the Republican nomination to the House of Representatives from the 22d Congressional District of Ohio. Political allegiances change and, in the upcoming election, appellant seeks the nomination to Congress of the American Independent Party. He is prevented from pursuing this nomination, however, by an intricate statutory scheme. Central to this scheme is a statute which provides, with various exceptions not relevant here, e. g., Ohio Rev. Code Ann. § 3517.013 et seq. (Supp. 1970), that "[n]o person shall be a candidate for nomination or election at a party primary if he voted as a member of a different political party at any primary election within the next preceding four calendar years." Ohio Rev. Code Ann. § 3513.191 (1960). Other provisions also being attacked require those working for primary candidates or signing their nominating petitions to be members of the party in which nomination is sought, id., § 3513.05 (Supp. 1970).

No one disputes that Ohio's statutory scheme prevents appellant from seeking the nomination of the party of his choice before 1974. Appellees, however, defend this limitation of freedom, saying that it is necessary to ensure "the formation of recognizable, relatively stable political parties with their own leadership, goals and philosophies." They conclude, "The protection of these purposes is a legitimate State concern." The District Court adopted this rationale:

> "The compelling State interest the Ohio Legislature seeks to protect by its contested statutes is the integrity of all political parties and membership therein. These Ohio statutes seek to prevent 'raiding' of one party by members of another party and to preclude candidates from '. . . altering their political party affiliations for opportunistic reasons.' State ex rel. Bible v. Board of Elections, 22 O. S. 2d 57, 258 N. E. 2d 227 (1970). Protection of party membership uniformly applied to all parties cannot be characterized as 'invidious discrimination' as defined in *Williams* [v. *Rhodes,* 393 U. S. 23 (1968)]." 337 F. Supp. 1405, 1406 (ND Ohio 1971).

Not only does the denial of appellant's right to seek the nomination of the American Independent Party in 1972 seriously impair his right of political expression, but the "compelling State interest" advanced by the appellees and accepted by the court below seems alien to our political and constitutional heritage. The right to run for public office seems a fundamental one.

The Ohio laws deny appellant that liberty, insofar as the 1972 election is concerned.

While I doubt that any state interest can be so compelling as to justify an impairment of associational freedoms in the area of philosophy—political or other-

wise*—the reasons advanced by the court below require an answer. The District Court and the appellees see a compelling state interest in the need to preserve the status quo and to preserve political stability. This interest, it is argued, is secured by creating impediments to changes in party allegiance. Our history is replete with instances in which politicians—having become disenchanted with their previous parties or perhaps only for the "opportunistic" reasons condemned by the court below—have changed from one party to another. This list includes Teddy Roosevelt, Strom Thurmond, Wayne Morse, John Lindsay, George Wallace, and a host of others. Though these breaks from past political ties add vitality to our political process, Ohio makes it very difficult.

I would note probable jurisdiction and put the case down for early argument.

MR. JUSTICE BRENNAN, MR. JUSTICE WHITE, and MR. JUSTICE POWELL:

We are three of the four who dissent from the affirmance of the judgment of the District Court in this case. In the circumstances present here, however, we do not insist that the case be set down for oral argument.

---

*In *Williams* v. *Rhodes*, 393 U. S. 23, 39–40 (separate opinion), I said:

"Cumbersome election machinery can effectively suffocate the right of association, the promotion of political ideas and programs of political action, and the right to vote. The totality of Ohio's requirements has those effects. It is unnecessary to decide whether Ohio has an interest, 'compelling' or not, in abridging those rights because 'the men who drafted our Bill of Rights did all the "balancing" that was to be done in this field.' Appellees would imply that 'no kind of speech is to be protected if the Government can assert an interest of sufficient weight to induce this Court to uphold its abridgment.' I reject that suggestion." (Citations omitted.)