SOCIALIST LABOR PARTY ET AL. *v.* GILLIGAN, GOVERNOR OF OHIO, ET AL.

No. 70–21.   Argued March 23, 1972—Decided May 30, 1972

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined. DOUGLAS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post,* p. 589.

*Sanford Jay Rosen* argued the cause for appellants. With him on the brief were *Melvin L. Wulf, Benjamin Sheerer,* and *Jerry Gordon.*

*Donald J. Guittar,* Assistant Attorney General of Ohio, argued the cause for appellees. With him on the brief were *William J. Brown,* Attorney General, and *Harold C. Heiss.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Appellant Socialist Labor Party has engaged in a prolonged legal battle to invalidate various Ohio laws restricting minority party access to the ballot. Concluding that "the totality of the Ohio restrictive laws taken as a whole" violated the Equal Protection Clause of the Fourteenth Amendment, this Court struck down those laws in *Socialist Labor Party* v. *Rhodes,* 393 U. S. 23, 34 (1968).[1] Following that decision the Ohio Legislature revised the state election code, but the Party was dissatisfied with the revisions and instituted the present suit in 1970.

The Socialist Labor Party, its officers, and members joined as plaintiffs in requesting a three-judge District Court to invalidate on constitutional grounds various sections of the revised election laws of Ohio. The plaintiffs specifically challenged provisions of the Ohio election laws requiring that a party either receive a certain percentage of the vote cast in the last preceding election or else file petitions of qualified electors corresponding to the same percentage; provisions relating to the organizational structure of a party; provisions requiring that a political party elect a specified number of delegates and alternates to a state convention; and provisions requiring a party to be part of a national political party that holds national conventions at which delegates elected in state primaries nominate presidential and vice-

---

[1] That case was decided together with *Williams* v. *Rhodes,* 393 U. S. 23 (1968).

presidential candidates. In addition, they challenged that part of the Ohio election code requiring a political party to file an affidavit under oath stating in substance that the party is not engaged in an attempt to overthrow the government by force or violence, is not associated with a group making such an attempt, and does not carry on a program of sedition or treason as defined by the criminal law.

The case was decided on cross-motions for summary judgment, the three-judge District Court having before it the complaint and answer of the respective parties, and affidavits filed pursuant to Fed. Rule Civ. Proc. 56. The court ruled on the merits in favor of all of appellants' constitutional challenges to the Ohio election laws except that involving the oath requirement, with respect to which it ruled in favor of the appellees. Both sides appealed to this Court, and we noted probable jurisdiction. 401 U. S. 991 (1971).

Since then, the posture of this litigation has undergone a significant change. On December 23, 1971, the Ohio Legislature enacted Senate Bill No. 460, which embodied an extensive revision of the state election code. Both sides now agree that the passage of this Act renders moot all but one of the issues decided below. The one challenged provision that remains unamended is the State's requirement that a political party execute the above-described affidavit under oath in order to obtain a position on the ballot.

Appellants' 1970 complaint represented a broadside attack against interrelated and allegedly overly restrictive provisions of the Ohio election laws. The three-judge District Court, in its ruling for the appellants on the issues that have now become moot, stated:

> "The 1969 amendments to the election laws merely perpetuate the restrictive laws enacted between 1948 and 1952. The overall effect of these laws

is still to deny to plaintiffs their constitutional right of political association." 318 F. Supp. 1262, 1269–1270 (footnote omitted).

Thus appellants, at the time they filed their 1970 action, were fenced out of the political process by a series of restrictive provisions that prevented them from making any progress toward a position on the ballot as a designated political party. Their challenge was necessarily of a somewhat abstract character, since under their allegations they were able to comply with very few of the provisions regulating access to the ballot. Now, however, with the enactment of a revised election code, the abstract character of the single remaining challenge to the Ohio election procedures stands out all the more.

Appellants did not in their action that came here in 1968 challenge the loyalty oath. Their 1970 complaint respecting the loyalty oath is singularly sparse in its factual allegations. There is no suggestion in it that the Socialist Labor Party has ever refused in the past, or will now refuse, to sign the required oath. There is no allegation of injury that the party has suffered or will suffer because of the existence of the oath requirement.

It is fairly inferable that the absence of such allegations is not merely an oversight in the drafting of a pleading. The requirement of the affidavit under oath was enacted in 1941, 119 Ohio Laws 586, and has remained continuously in force since that date. The Socialist Labor Party has appeared on the state ballot since the law's passage, and, unless the state officials have ignored what appear to be mandatory oath provisions, it is reasonable to conclude that the party has in the past executed the required affidavit.

It is axiomatic that the federal courts do not decide abstract questions posed by parties who lack "a personal stake in the outcome of the controversy." *Baker* v.

*Carr,* 369 U. S. 186, 204 (1962); *Flast* v. *Cohen,* 392 U. S. 83, 101 (1968). Appellants argue that the affidavit requirement violates the First and Fourteenth Amendments, but their pleadings fail to allege that the requirement has in any way affected their speech or conduct, or that executing the oath would impair the exercise of any right that they have as a political party or as members of a political party. They contend that to require it of them but not of the two major political parties denies them equal protection, but they do not allege any particulars that make the requirement other than a hypothetical burden. Finally, they claim that the required affidavit is impermissibly vague and that its enforcement procedures do not comport with due process. But the record before the three-judge District Court, and now before this Court, is extraordinarily skimpy in the sort of proved or admitted facts that would enable us to adjudicate this claim. Since appellants have previously secured a position on the ballot with no untoward consequences, the gravamen of their claim that it injures them remains quite unclear.

In the usual case in which this Court has passed on the validity of similar oath provisions, the party challenging constitutionality was either unable or unwilling to execute the required oath and, in the circumstances of the particular case, sustained, or faced the immediate prospect of sustaining, some direct injury as a result of the penalty provisions associated with the oath. See, *e. g., Cole* v. *Richardson,* 405 U. S. 676 (1972); *Keyishian* v. *Board of Regents,* 385 U. S. 589 (1967); *Wieman* v. *Updegraff,* 344 U. S. 183 (1952).

In *Cramp* v. *Board of Public Instruction,* 368 U. S. 278, 283–285 (1961), the appellants were public school teachers who had been threatened with discharge for their refusal to execute the required oath. The Court held that even though appellants might be able to sign the

required oath in good conscience, the record there indicated that they would still be subject to possible hazards of a perjury conviction by reason of the vagueness of the oath's language. In the present case, however, appellants have apparently signed the oath at previous times, and so far as this record shows they have suffered no injury as a result. The State has never questioned the truth of the affidavit, and appellants' conduct and associations have not been constricted as a result of their having executed the affidavit.

The long and the short of the matter is that we know very little more about the operation of the Ohio affidavit procedure as a result of this lawsuit than we would if a prospective plaintiff who had never set foot in Ohio had simply picked this section of the Ohio election laws out of the statute books and filed a complaint in the District Court setting forth the allegedly offending provisions and requesting an injunction against their enforcement. These plaintiffs may well meet the technical requirement of standing, and they may be parties to a case or controversy, but their case has not given any particularity to the effect on them of Ohio's affidavit requirement.

This Court has recognized in the past that even when jurisdiction exists it should not be exercised unless the case "tenders the underlying constitutional issues in clean-cut and concrete form." *Rescue Army* v. *Municipal Court,* 331 U. S. 549, 584 (1947). Problems of prematurity and abstractness may well present "insuperable obstacles" to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present. *Id.,* at 574.[2]

---

[2] Despite the contrary implication in the dissent, see *post,* at 592–593, n. 3, the holding of *Rescue Army* has been applied by this Court to numerous appeals in which no statutory or constitutional impediment to jurisdiction was present. See, *e. g., Cowgill* v. *California,* 396 U. S. 371 (1970) (Harlan, J., concurring); *Atlanta Newspapers, Inc.* v. *Grimes,* 364 U. S. 290 (1960); *Teamsters* v. *Denver Milk Pro-*

We find that the present posture of this case raises just such an obstacle. All issues litigated below have become moot except for one that received scant attention in appellants' complaint and was treated not at all in the affidavits filed in support of the cross-motions for summary judgment. Nothing in the record shows that appellants have suffered any injury thus far, and the law's future effect remains wholly speculative. Notwithstanding the indications that appellants have in the past executed the required affidavit without injury, it is, of course, possible that at some future time they may be able to demonstrate some injury as a result of the application of the provision challenged here. Our adjudication of the merits of such a challenge will await that time. This appeal must be dismissed. *Rescue Army* v. *Municipal Court, supra,* at 585.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

The oath required of appellants for political recognition in Ohio is plainly unconstitutional as a denial of

*ducers, Inc.,* 334 U. S. 809 (1948). Nor has there ever been any suggestion that *Rescue Army* should apply only to appeals from state, rather than federal, courts. See *United States* v. *Fruehauf,* 365 U. S. 146, 157 (1961); *United States* v. *CIO,* 335 U. S. 106, 125–126 (1948) (Frankfurter, J., concurring). See also *Albertson* v. *Millard,* 345 U. S. 242, 245 (1953). Despite this lack of case support, the dissent argues that the *Rescue Army* doctrine should not apply to the present case, since it is an appeal from a federal court judgment pursuant to 28 U. S. C. § 1253, whereas *Rescue Army* was an appeal from a state court judgment pursuant to 28 U. S. C. § 1257. This distinction is evanescent. Under both grants of jurisdiction this Court is obligated to rule upon those properly presented questions that are necessary for decision of the case. But when the issues are not presented with the clarity needed for effective adjudication, appellate review of a federal court judgment is every bit as inappropriate as was review of a state court judgment in *Rescue Army.*

equal protection. Because I believe this a proper case for declaratory relief, I would therefore reverse the judgment below.

In order to "be recognized or be given a place on the ballot in any primary or general election," Ohio requires that members of political parties file a loyalty oath with the Secretary of State. Ohio Rev. Code Ann. § 3517.07 (1960) (see appendix to this opinion). I need not consider the vagueness or overbreadth of the Ohio oath, for my views on that subject have been stated over and over again.[1] For the present case, it is sufficient for my decision that Ohio requires the oath based upon the invidious classification of political allegiance.

An exception from the oath requirement is made for "any political party or group which has had a place on the ballot in each national and gubernatorial election since the year 1900." *Ibid.* It is conceded that this exemption applies only to the Democratic and Republican Parties (see Plaintiffs' Motion for Summary Judgment), and we may properly treat it as if it were written in precisely those terms. See *Lane* v. *Wilson,* 307 U. S. 268 (1939); *Guinn* v. *United States,* 238 U. S. 347 (1915). This exception is thus part of the broader pattern of Ohio's discriminatory preference for the two established political parties. We considered this discrimination before in *Williams* v. *Rhodes,* 393 U. S. 23, 31 (1968), and said:

"No extended discussion is required to establish that the Ohio laws before us give the two old,

---

[1] *E. g., Cole* v. *Richardson,* 405 U. S. 676, 687 (1972) (dissenting opinion); *W. E. B. DuBois Clubs* v. *Clark,* 389 U. S. 309, 313 (1967) (dissenting opinion); *Elfbrandt* v. *Russell,* 384 U. S. 11 (1966); *Nostrand* v. *Little,* 362 U. S. 474, 476 (1960) (dissenting opinion); *First Unitarian Church* v. *Los Angeles,* 357 U. S. 545, 547 (1958) (concurring opinion); *Speiser* v. *Randall,* 357 U. S. 513, 532 (1958) (concurring opinion).

established parties a decided advantage over any new parties struggling for existence and thus place substantially unequal burdens on both the right to vote and the right to associate. The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot. In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.' "

In a separate opinion, I noted, "The Equal Protection Clause of the Fourteenth Amendment permits the States to make classifications and does not require them to treat different groups uniformly. Nevertheless, it bans any 'invidious discrimination.' " *Id.*, at 39. Classifications based upon political or religious associations, beliefs, or philosophy are such "invidious" classifications. As Mr. Justice Black said in *Cox* v. *Louisiana,* 379 U. S. 559, 581:

"[B]y specifically permitting picketing for the publication of labor union views, Louisiana is attempting to pick and choose among the views it is willing to have discussed on its streets. It thus is trying to prescribe by law what matters of public interest people whom it allows to assemble on its streets may and may not discuss. This seems to me to be censorship in a most odious form, un-

constitutional under the First and Fourteenth Amendments. And to deny this appellant and his group use of the streets because of their views against racial discrimination, while allowing other groups to use the streets to voice opinions on other subjects, also amounts, I think, to an invidious discrimination forbidden by the Equal Protection Clause of the Fourteenth Amendment."

"While I doubt that any state interest can be so compelling as to justify an impairment of associational freedoms in the area of philosophy—political or otherwise," *Lippitt* v. *Cipollone,* 404 U. S. 1032, 1033–1034 (DOUGLAS, J., dissenting); see also *Williams* v. *Rhodes, supra,* at 39–40 (separate opinion of DOUGLAS, J.), the appellees have not even offered a colorable explanation for the disparate treatment of the separate political parties. I conclude, therefore, that the unequal burden placed upon appellants is unconstitutional.[2]

The Court does not reach appellants' challenge to the loyalty oath, however, because it concludes that "they do not allege any particulars that make the [oath] requirement other than a hypothetical burden." *Ante,* at 587. In sharp contrast to the decision in *Rescue Army* v. *Municipal Court,* 331 U. S. 549 (1947), the only case upon which it relies,[3] the Court does not explain what

---

[2] While the District Court acknowledged that one of appellants' challenges to the oath was that it "violates the Equal Protection Clause by excepting the Democratic and Republican Parties from its ambit," 318 F. Supp. 1262, 1270, the court inexplicably did not address this argument.

[3] *Rescue Army* came on appeal from the Supreme Court of California and involved a complex state statutory scheme.

The present case, by contrast, comes from a United States District Court where our appellate jurisdiction is founded upon 28 U. S. C. § 1253. It is, I think, an undue extension of *Rescue Army* to apply it to an appeal from a federal court which properly heard

additional facts it feels are necessary to reach the merits. In basing its decision on this ground, I fear that the Court has taken an unduly narrow view of declaratory relief.

Appellants argue that the oath is facially invalid for the invidious classification it creates, for its overbreadth

---

and considered a federal constitutional question. See H. Hart & H. Wechsler, The Federal Courts and the Federal System 149 (1953). Our differing treatment of appeals from federal and state courts relates to the difference between the courts from which the appeals are taken. If an appeal from a state court does not fall within Art. III, it would in nowise affect the jurisdiction of the court from which the appeal was taken. *Doremus* v. *Board of Education,* 342 U. S. 429, 434 (1952). The same cannot be said, however, of appeals from federal courts, *e. g., Muskrat* v. *United States,* 219 U. S. 346. Thus, "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States* v. *Munsingwear,* 340 U. S. 36, 39 (1950); see R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court § 273, p. 501 (1951). "If the proceeding is one to review the decision of a state court," however, our practice is to "remand the cause to the state court in order that that court may take such further proceedings as may be deemed appropriate."

The cases cited by the majority, *ante,* at 588–589, n. 2, do not support today's treatment of an appeal from an Art. III court. In *United States* v. *Fruehauf,* 365 U. S. 146 (1961), the District Court dismissed an indictment and we reversed and remanded holding that the provable facts might bring the case within the statute. In *United States* v. *CIO,* 335 U. S. 106 (1948), we affirmed the judgment of the District Court which had dismissed an indictment, because the facts alleged did not state an offense; and we did not therefore reach the constitutional issue relied upon by the District Court. Finally, *Albertson* v. *Millard,* 345 U. S. 242 (1953), was an abstention case in which we vacated the judgment of the District Court and remanded with directions to hold the case until the state law questions had been resolved. None of these cases, therefore, stands for the proposition that we may dismiss a perfected appeal from a properly entered judgment of an Art. III court.

and its vagueness. Certainly such challenges to the facial validity of a statute are ideally suited for declaratory judgment. *Moore* v. *Ogilvie,* 394 U. S. 814. There can be no question of appellants' stake in the controversy, for if they refuse to subscribe to the oath they will be denied political recognition, cf. *Law Students Research Council* v. *Wadmond,* 401 U. S. 154 (1971); *Baird* v. *State Bar of Arizona,* 401 U. S. 1 (1971); while, in order to obtain such recognition, they must subscribe to an unconstitutional oath or subject themselves to an invidious classification.[4] Cf. *Keyishian* v. *Board of Regents,* 385 U. S. 589 (1967); *Cramp* v. *Board of Public Instruction,* 368 U. S. 278 (1961).[5] Under either alternative, appellants have "such a personal stake in the outcome . . . as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker* v. *Carr,* 369 U. S. 186, 204 (1962). Nor is this a case where appellants' injury is only speculative, cf. *Golden* v. *Zwickler,* 394 U. S.

---

[4] The suggestion that "appellants have apparently signed the oath at previous times," *ante,* at 588, and thus somehow have waived their right to object to the oath, is unsupported by the record. Appellants include not only the Socialist Labor Party but also its named officers and members who would be required to execute the oath. Whatever relevance there may be to the fact that the Socialist Labor Party was on the ballot in Ohio in 1946, that fact has no bearing with regard to the individual appellants.

[5] As to *Cramp,* it is suggested that "the record there indicated that [Cramp] would still be subject to possible hazards of a perjury conviction by reason of the vagueness of the oath's language." *Ante,* at 588. In our opinion in *Cramp,* however, we noted that Cramp alleged in his complaint "that he 'is a loyal American and does not decline to execute or subscribe to the aforesaid oath for fear of the penalties provided by law for a false oath,'" 368 U. S., at 281. In any event, Ohio also subjects oath takers to the "possible hazards of a perjury conviction," see Ohio Rev. Code Ann. §§ 3599.36, 2917.25 (1960), so *Cramp* is not distinguishable.

103 (1969), for they allege that they "will continue to nominate candidates for political office in Ohio in the future."

*Evers* v. *Dwyer,* 358 U. S. 202 (1958), is relevant here. The appellant in that case was a black who sought a declaratory judgment that a state statute requiring the segregation of the races on municipal buses was unconstitutional. In dismissing the complaint, the District Court took the approach this Court takes today and reasoned that appellant "ha[d] not been injured at all" because "he was not a regular or even an occasional user of bus transportation." We summarily reversed that decision, saying that an individual "subjected by statute to special disabilities necessarily has, we think, a substantial, immediate, and real interest in the validity of the statute which imposes the disability." 358 U. S., at 204. And see *Gooding* v. *Wilson,* 405 U. S. 518.

In *Evers,* we did not base our decision on any consideration of whether the seats blacks were required to take were better or worse than those available to whites. Rather, we held that members of a disfavored minority could challenge unconstitutional statutory classifications which set them apart. That was the "disability" to which we referred. Appellants are members of an unfavored political minority in Ohio and they too should be able to challenge invidious classifications which set them apart from the favored majority.

Since 1946, appellants and other minority political parties in Ohio have been repressed by legislation enacted by the two dominant parties. In the last four years, they have sought relief from these shackles so that their voices could be heard in the political arena.[6] But Ohio

---

[6] See, *e. g., Lippitt* v. *Cipollone,* 404 U. S. 1032 (1972), aff'g 337 F. Supp. 1405 (ND Ohio 1971); *Brockington* v. *Rhodes,* 396 U. S. 41 (1969); *Williams* v. *Rhodes,* 393 U. S. 23 (1968), aff'g *sub nom.*

has erected innumerable roadblocks to their participation. Under the majority's decision, each obstacle will require a separate lawsuit because it will only be after they have been frustrated at a particular turn that they will be able to satisfy this new test for declaratory relief.

The modern remedy of declaratory judgments should be used to simplify, not multiply, litigation.

I would reverse the judgment below.

## APPENDIX TO OPINION OF DOUGLAS, J., DISSENTING

Ohio Rev. Code Ann. § 3517.07 (1960):

"No political party or group which advocates, either directly or indirectly, the overthrow, by force or violence, of our local, state, or national government or which carries on a program of sedition or treason by radio, speech, or press or which has in any manner any connection with any foreign government or power or which in any manner has any connection with any group or organization so connected or so advocating the overthrow, by force or violence, of our local, state, or national government or so carrying on a program of sedition or treason by radio, speech, or press shall be recognized or be given a place on the ballot in any primary or general election held in the state or in any political subdivision thereof.

"Any party or group desiring to have a place on the ballot shall file with the secretary of state and with the board of elections in each county in which it desires to have a place on the ballot an affidavit made by not less than ten members of such party, not less than

_Socialist Labor Party_ v. _Rhodes,_ 290 F. Supp. 983 (Ohio 1968); _State ex rel. Bible_ v. _Board of Elections,_ 22 Ohio St. 2d 57, 258 N. E. 2d 227; see also _State ex rel. Beck_ v. _Hummel,_ 150 Ohio St. 127, 80 N. E. 2d 899.

three of whom shall be executive officers thereof, under oath stating that it does not advocate, either directly or indirectly, the overthrow, by force or violence, of our local, state, or national government; that it does not carry on any program of sedition or treason by radio, speech, or press; that it has no connection with any foreign government or power; that it has no connection with any group or organization so connected or so advocating, either directly or indirectly, the overthrow, by force or violence, of our local, state, or national government or so carrying on a program of sedition or treason by radio, speech, or press.

"Said affidavit shall be filed not less than six nor more than nine months prior to the primary or general election in which the party or group desires to have a place on the ballot. The secretary of state shall investigate the facts appearing in the affidavit and shall within sixty days after the filing thereof find and certify whether or not this party or group is entitled under this section to have a place on the ballot.

"Any qualified member of such party or group or any elector of this state may appeal from the finding of the secretary of state to the supreme court of Ohio.

"This section does not apply to any political party or group which has had a place on the ballot in each national and gubernatorial election since the year 1900."