Dorothy DOE, individually and on behalf of her minor dependent children, and Frances Roe, individually and on behalf of all others similarly situated, Plaintiffs,

v.

R. Archie ELLIS, Director, South Carolina Department of Public Welfare, and Lillie I. Mae Dean, Director, Richland County Department of Public Welfare, Defendants.

Civ. A. No. 71–1231.

United States District Court, D. South Carolina, Columbia Division.

Heard May 31, 1972.

Decided Aug. 23, 1972.

Robert R. Madama, Jr., and Herbert E. Buhl, III, Legal Aid Society, Columbia, S. C., for plaintiffs.

Alexander S. Macaulay, Asst. Atty. Gen., Columbia, S. C., for defendants.

Before RUSSELL, Circuit Judge, and CHAPMAN and BLATT, District Judges.

## OPINION AND ORDER

BLATT, District Judge:

This action was commenced under 42 U.S.C. § 1983 by the two named plaintiffs, Dorothy Doe and Frances Roe, on behalf of themselves and all others similary situated, in order to challenge certain regulations and policies of the South Carolina Department of Public Welfare (SCDPW) as promulgated and applied by the defendants herein. These regulations provide that, if a mother of an illegitimate child fails or refuses to name, help locate and/or sue the putative father of her child, her and her child's Aid to Families with Dependent Children's (AFDC) grant will be terminated or denied.[1] Plaintiffs contend

1. Volume IV of the South Carolina Department of Public Welfare Policies and Procedures in Public Assistance states at pages 36 and 37:

 "*Desertion and Non-Support*
 The law of South Carolina is that a father is responsible for the support and care of his children. It is, therefore, necessary that every resource available be used to see that he discharges this responsibility.

 Where desertion is one of the factors to be considered in determining eligibility for aid to families with dependent children, it will be necessary to have proof that the parent, as defined above, has physically removed himself from applicant's and child's home, that every effort to locate him has been made and that his whereabouts is not known. However, where it appears obvious that the parent is not in the home, it may be assumed that he has deserted until otherwise established. The applicant will be required to initiate immediate steps to locate the deserting parent, with the help of the worker, but assistance may be given on the presumptive evidence of desertion while desertion is being definitely established.

 In 'cases involving desertion there will usually be two types of situations. There will be situations where the ap-

 plicant states that the parent's whereabouts is not known or his whereabouts may be known but he is not in the home and has failed to support his family. In the first instance it will be necessary to locate the deserting parent. This usually requires more help by the service worker, as the agency has resources not known to the applicant. Once a deserting parent has been located, the applicant will be required to make every effort to get support from him, including use of the courts if necessary. If the whereabouts of the parent is known, it is just a matter of taking steps to require him to support his family. If he cannot be persuaded to do so voluntarily, then court action must be given serious consideration. The service worker will assist the applicant to the extent needed. In all cases of desertions it is the applicant's primary responsibility to secure support if at all possible. Failure to take required action, or failure to cooperate with the agency in establishing desertion and lack of support will be sufficient reason for denying or discontinuing assistance.

 Also at pages 42 and 43:
 *Mothers with Children Born Out of Wedlock*
 The question of what to do about mothers who have had a series of relation-

that these policies and procedures are inimical to rights secured by the Fifth, Ninth and Fourteenth Amendments to the United States Constitution and eviscerate the public policy of the United States with respect to aid to families with dependent children as embodied in the Social Security Act of 1935, 42 U.S.C. § 601, et seq., by virtue of their contravention of same.

Since plaintiffs challenge a state regulatory provision on constitutional grounds and seek to enjoin state officers from refusing to grant to plaintiffs and their children AFDC benefits on the grounds that the mother has refused to name and/or prosecute the putative father of the child, a three-judge court was convened pursuant to 28 U.S.C. § 2281 and § 2284. Hearings were held on February 15 and 18, 1972, by the Honorable Robert F. Chapman to resolve certain factual issues before the legal issues were submitted to the three-judge panel. From the evidence presented, the Court made its Findings of Fact[2] which were filed on April 14, 1972.

ships with men resulting in the birth of one or more children has always been a stumbling block to caseworkers and society in general. Along with this problem is the matter of a mother who not only has children born out of wedlock but who persists in casual or promiscuous relationships which are apt to produce more children and more problems.

The agency's position on these problems, insofar as assistance is concerned, is that a father of a child is responsible by law for the support of his child. It is therefore necessary that every effort be made to determine the paternity of a child born out of wedlock and, once determined, to secure support from the father. The determination of paternity and the securing of support is the primary responsibility of the applicant for assistance. The service worker's responsibility will be to point out the action to be taken and to provide any help that she can. She will not harass the applicant with any undue pressure, but in the final analysis the applicant must decide whether she wants to meet the agency's requirement that every effort be made to determine paternity and to secure support. Failure to accept the necessity of meeting the requirement may be sufficient grounds for denying or discontinuing assistance. Since cases involving out-of-wedlock children may take considerable time to clear, assistance should not be denied pending clearing up the matter of paternity and support. However, steps should be initiated immediately by the service worker and followed through to a conclusion.

As to the other problem of mothers continuing a practice of casual or promiscuous relations with men, such practices will not be considered common-law re-lationships. The agency has no desire to inhibit normal relationships, but should these relationships result in the birth of a child, the father will be held responsible for the support of his child."

2. FINDINGS OF FACT

1. The parties stipulated that the plaintiff Frances Roe was disqualified for benefits under AFDC, because of her refusal to prosecute the putative father of her illegitimate child after advising the Department of Public Welfare of his name.

2. That plaintiff Dorothy Doe is the mother of two illegitimate children by the same man. This man is married, has four legitimate children by his wife, and at the time of the DPW hearing on Dorothy Doe's application for AFDC benefits for the second illegitimate child, he was physically disabled from working due to an industrial accident. At that time he was financially unable to support his children by Dorothy Doe.

3. That AFDC to Dorothy Doe was discontinued after a hearing on June 30, 1971, before the Fair Hearing Committee. This decision was upon the ground that the father had not deserted the illegitimate children and was still available to furnish support to them. The decision of the committee stated in part:

"The policy of the agency is that a father is responsible for the support of his children. The policy requires that court action be taken for the establishment of paternity and to obtain court-ordered support. The policy requires the establishment of need and resources in determining eligibility and the amount of award . . .

It is recommended that if claimant wishes to take Mr. Caine to court for the purpose of establishing paternity

The statutory basis for plaintiffs' claim for relief is the requirement that, as a condition of a state's participation in the federal-state public assistance programs funded under the Social Security Act, such state must conform to and comply with the provisions of the Social Security Act and with the regulations promulgated thereunder by the Department of Health, Education and Welfare (DHEW). Since the statute was challenged on constitutional grounds of a substantial nature and since the remedy sought was injunction against the enforcement of a state statute, a three-judge court was providently convened. Additionally, the plaintiffs, as discussed above, have raised an issue predicated on the alleged conflict between Volume IV of the South Carolina Department of Public Welfare Policies and Procedures in Public Assistance, (see *note 1*), and certain provisions of the Social Security Act of 1935.

■ This court is not compelled to reach the constitutional issues, since we deem the statutory claim to be meritorious. "This disposition of the matter does not void the jurisdiction of this three-judge court. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118." Doe v. Swank, 332 F.Supp. 61, 63 (N.D.Ill.1971) affirmed, without opinion, sub nom, Weaver v. Doe, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1961).

■ The question before this Court, simply stated, is whether the regulations of the South Carolina Department of Welfare requiring the mother of the needy child to name the putative father and/or prosecute him are consonant with the statutory provisions of the Social Security Act. That each participating state must operate its welfare programs consistent with the Social Security Act is beyond cavil. "Eligibility for aid under the Social Security Act of 1935 is conditioned upon two factors. A child must be both needy and dependent. No other conditions of eligibility are required." Doe v. Swank, *supra,* at page 63. The state contends that the regulations under attack are merely necessary effectuations of the requirement mandated by the Act obligating them to identify and prosecute the father of the needy child in order for the state to qualify for federal aid. These requirements are embodied in 42 U.S.C. § 602(a)(10) and (17) (they have been denominated the Notice to Law Enforce-

and obtaining court ordered support, the case may be reconsidered if necessary or advisable after court decision has been reached."
That Dorothy Doe has been required to and did name the father of her illegitimate children, and at the insistence of DPW has brought a legal action against him for support, which action is now pending.
4. That as administered by the offices of the Department of Public Welfare in the various counties of South Carolina there is no uniform requirement that the mother of an illegitimate child prosecute, or assist in the prosecution of the putative father, but it is required that she name the father.
5. That circumstances of each individual case govern the action of Department of Public Welfare as to whether the father's support should be pursued by legal action. In cases where legal action would do more harm than good, it is not pursued. Such cases would be a child

born out of an incestuous relationship, or cases where the father has limited income and a family of legitimate children to support.
6. That there is no written requirement that the mother name the father and prosecute him for non-support, but failure to name the father is considered lack of cooperation on the part of the mother, which prevents DPW from determining financial need and the sources of income available for support of the children. Such lack of cooperation in most cases causes the mother and the illegitimate child to be disqualified for AFDC.
7. That the practical application of the rules of the Department of Public Welfare for South Carolina, although such application may differ slightly from county to county and from case to case, requires the mother of an illegitimate child to name the father and then let DPW decide whether she must prosecute him.

ment Officials (NOLEO) requirements) and charge the states "with the furnishing of aid to all eligible individuals with reasonable promptness while at the same time the states must diligently attempt to secure support from deserting parents." Taylor v. Martin, 330 F.Supp. 85, 88 (N.D.Calif.1971) affirmed, without opinion, sub nom, Carleson v. Taylor, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971).

 With respect to the requirement that the mother of an illegitimate child name the putative father, we have concluded that the plaintiffs Doe and Roe do not have standing to attack the validity of that facet of the South Carolina Regulation and this Court expresses no opinion on the merits of that particular attack. See Socialist Labor Party v. Gilligan, 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972). In the present case, both plaintiffs voluntarily disclosed the names of the putative fathers.[3] It is established law that a federal court does not concern itself with abstract questions posed by parties who lack a personal interest in the outcome of the controversy. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Litigants have "standing to seek redress for injuries done to them, but may not seek redress for injuries done to others." Moose Lodge #107 v. Irvis, 407 U.S. 163, at 92 S.Ct. 1965, at 32 L.Ed.2d 627 (1972).

Plaintiff Roe was disqualified for benefits under AFDC because of her failure to prosecute the putative father of her illegitimate child.[4] Plaintiff Doe's AFDC was discontinued after a hearing on the ground that the father of her illegitimate children had not deserted these children, but was, in fact, still available to furnish support.[5] Plaintiff Doe was informed that a decision on her part to prosecute the father for the purpose of obtaining support from him could result in reconsideration of her case. Thus, both plaintiffs were effec-

tively denied AFDC assistance as a result of their refusal to prosecute the respective putative fathers, and such refusal requires this Court to address itself to this issue.

██ While the goal sought to be reached by conditioning AFDC assistance upon prosecution of a putative father "may be admirably adapted to securing support from the absent spouse . . . . it is nonetheless invalid since it significantly interferes with the main thrust of AFDC, aid to the child." Taylor v. Martin, *supra*, 330 F.Supp. at 89. This is so because aid to the *dependent, needy* child is the paramount goal of the AFDC program. The state cannot emasculate that goal in the name of an ancillary one. We feel that the Court in Taylor v. Martin offered a condign explanation of this point at page 90 of 330 F.Supp.:

"We do not feel it necessary to engage in semantic struggle in order to characterize § 11477(b) as an 'additional eligibility requirement'. It is true that the statute operates to terminate benefits rather than to prevent their inception. From a realistic viewpoint, however, we perceive little difference between conditions on initial eligibility and on continued eligibility: the central consideration is that AFDC aid is being denied to those who meet the only criteria—'need' and 'dependence'—which Congress has established for eligibility." 330 F.Supp. 90.

The state attempts to circumvent the aversion to additional eligibility requirements articulated by other federal courts by euphemistically denominating their regulations as a "duty to cooperate." This is a factitious distinction since the practical effect of "lack of cooperation in most cases causes the mother and the illegitimate child to be disqualified for AFDC."[6] Therefore, it is clear that the requirement that the mother of a needy child participate in the prosecution of

---

3. See Findings of Fact 1 and 3.

4. See Findings of Fact 1.

5. See Findings of Fact 3.

6. See Findings of Fact 6.

**380**

the putative father "erects an unauthorized barrier to AFDC eligibility and thus conflicts with the AFDC provisions of the Social Security Act." Taylor v. Martin, *supra*, at page 91. Based on the foregoing, it is

Ordered, that the defendants be, and they hereby are, enjoined from discontinuing or denying AFDC assistance to the plaintiffs and the members of the class represented by such plaintiffs in the instant case on the ground that such parties fail to assist in the prosecution of the putative fathers of their dependent, needy children as is required by the South Carolina Department of Welfare regulations under attack.

And it is so ordered.