592 F.2d 529
 INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., and
Kuvera Das Adhikari, on behalf of themselves and
all International Society for Krishna
Consciousness members,
Plaintiffs-Appellants,
v.
Thomas A. KLEPPE, Department of Interior Secretary, and
Edward H. Levi, United States Attorney General,
Individually and in their official
capacities, Defendants-Appellees.
 No. 77-1086.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 29, 1979.
Rehearing Denied March 21, 1979.
 
 Barry A. Fisher (argued), Beverly Hills, Cal., for plaintiffs-appellants.
 David E. Golay, Asst. U. S. Atty. (argued), San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING and CHOY, Circuit Judges, and CHRISTENSEN,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 The International Society for Krishna Consciousness (ISKON) and Kuvera Das Adhikari, a member of that Society, appeal from a district court decision denying their petition for preliminary and final injunctive relief. We vacate the district court's decision and remand with instruction.
 
 I. Statement of the Case
 
 2
 ISKON is an international religious society which espouses the religious and missionary views of Krishna Consciousness. That religion imposes upon its members the duty to perform a religious ritual known as Sankirtan, the dissemination and sale of religious tracts and solicitation of contributions in public places.
 
 
 3
 According to appellants, ISKON members, including Kuvera, attempted to perform Sankirtan in Yosemite National Park. They were informed by Chief Park Ranger William Wendt that two Park Service Regulations, 36 C.F.R. §§ 2.4 and 2.21,[1] applied to their distribution of literature and solicitation of contributions. Wendt also allegedly explained that distribution and solicitation in violation of those regulations could result in criminal prosecutions.[2] All ISKON members abstained and no arrests were made.
 
 
 4
 Appellants also claim to have contacted "other national parks throughout California and the western states, and the administration at each park took the position that (§§ 2.4 and 2.21) apply to (appellants)."[3] ISKON and its members have abstained in all cases and no arrests have ever been made for distribution of literature or solicitation of funds in violation of any Park Service regulations.
 
 
 5
 This suit was filed on May 11, 1976, under 28 U.S.C. §§ 1331 and 1343(3)-(4). Appellants claim that §§ 2.4 and 2.21 are unconstitutional under the first amendment both on their face and as applied. Appellants seek declaratory and injunctive relief as well as attorneys' fees and costs. After a hearing, the district court concluded that it had jurisdiction to hear the case, held that the regulations were valid on their face, and denied injunctive relief.[4]
 
 
 6
 On March 29, 1977, the Department of Interior, recognizing that existing "regulations applicable outside of the District of Columbia and its environs do not directly address the sale or distribution of printed matter," proposed that a new regulation be included in C.F.R. title 36, 42 Fed.Reg. 16639, 16639-41. This proposed regulation, § 2.39, was amended and adopted in June of 1977, 42 Fed.Reg. 30501, 30501-03.[5]
 
 II. Ripeness
 
 7
 In Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court noted the particular importance of requiring a "ripe" controversy when injunctive or declaratory relief is sought. Id. at 148, 87 S.Ct. 1507. The Court stated that the
 
 
 8
 basic rationale (for the ripeness doctrine) is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.
 
 
 9
 Id. at 148-49, 87 S.Ct. at 1515. The Supreme Court has recently indicated that the ripeness doctrine is based in part upon the case or controversy requirement of Article III and in part upon the prudential judicial rule against unnecessary constitutional adjudication, and thus must be carefully respected. Regional Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The Court has also instructed that federal courts should be especially wary of adjudicating claims that a law will have an unconstitutional effect In futuro, especially when the operation and effect of the law is not presently clear:
 
 
 10
 This Court has recognized in the past that even when jurisdiction exists it should not be exercised unless the case "tenders the underlying constitutional issues in clean-cut and concrete form." Rescue Army v. Municipal Court, 331 U.S. 549, 584 (, 67 S.Ct. 1409, 91 L.Ed. 1666) (1947). Problems of prematurity and abstractness may well present "insuperable obstacles" to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present. Id., at 574, (, 67 S.Ct. 1409).
 
 
 11
 Socialist Labor Party v. Gilligan, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972) (footnote omitted).
 
 
 12
 Assuming Arguendo that the Article III case or controversy requirement is satisfied here, we believe that the facts recounted in part I Supra demonstrate that the instant cause is not ripe for adjudication. Of particular salience is that appellants have never applied for and have never been denied a permit under the challenged regulations. Moreover, appellants have never been prosecuted for violation of those regulations. Further, newly-adopted regulations, specifically designed to deal with appellants' type of activities, cast doubt upon the currency and significance of appellants' challenges. And as the district court found[6] :
 
 
 13
 There is no Government action, pending or threatened, charging plaintiffs or any of them, with violation of 36 C.F.R., Section 2.4, Section 2.21 or any other regulation in 36 C.F.R., Parts 1 through 6, inclusive. No permit proceeding by plaintiffs pursuant to 36 C.F.R., Section 2.21 is pending in the Interior Department or this Court.
 
 
 14
 We must conclude that the present dispute is not sufficiently concrete to warrant adjudication at this time and the petition should be dismissed. See Pence v. Andrus, 586 F.2d 733, 735-38 (9th Cir. 1978).
 
 
 15
 VACATED and REMANDED to the district court with instruction to dismiss the petition.
 
 
 
 *
 The Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 36 C.F.R. § 2.4 provides:
 (a) Begging is prohibited (in national parks).
 (b) Hitchhiking or the soliciting of transportation is prohibited.
 (c) Commercial soliciting of any kind without a permit is prohibited: Provided, That this section shall not apply to transactions with authorized concessioners.
 
 
 [36]
 C.F.R. § 2.21 provides:
 (a) Public meetings, assemblies, gatherings, demonstrations, parades and other public expressions of views are permitted within park areas on lands which are open to the general public provided a permit therefor has been issued by the Superintendent.
 (b) Any application for such a permit shall set forth the name of the applicant, the date, time, duration, nature and place of the proposed event, an estimate of the number of persons expected to attend, and a statement of equipment and facilities to be used in connection therewith.
 (c) The Superintendent shall issue a permit on proper application unless:
 (1) A prior application for the same time and place has been made which has been or will be granted; or
 (2) The event will present a clear and present danger to the public health or safety; or
 (3) The event is of such nature or duration that it cannot reasonably be accommodated in the particular park area applied for.
 (d) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is maintained. It may also contain reasonable limitations on the time and area within which the event is permitted.
 
 
 [2]
 16 U.S.C. § 3 provides in relevant part:
 The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and any violation of any of the rules and regulations authorized by this section and sections 1, 2 and 4 of this title shall be punished by a fine of not more than $500 or imprisonment for not exceeding six months or both, and be adjudged to pay all costs of the proceedings.
 According to the Government, Wendt responded to an oral inquiry by members of ISKON concerning ISKON activities at Yosemite. He informed them that they could distribute their literature but that, expressing his own view, he would deny them permission to sell the literature or solicit contributions. He further informed them that they could take their request to sell and solicit directly to the Park Superintendent, but that he would recommend that the Superintendent refuse their request. The Superintendent indicated that no one from ISKON ever made any request for permission to conduct first amendment activities in Yosemite National Park.
 
 
 [3]
 In February, 1976, ISKON wrote letters seeking information as to whether its members would be allowed to distribute or sell their religious literature at Death Valley National Monument and Grand Canyon National Park. The Chief Park Ranger at Death Valley replied that "36 C.F.R. 2.4 prohibits begging and soliciting within areas of the National Park System," and "suggest(ed) that Death Valley National Monument be deleted from (ISKON's) proposed visits." The Superintendent at Grand Canyon National Park forwarded ISKON's letter to the National Park System's Western Regional Director, who replied in part:
 The right to Distribute printed material within areas of the National Park System is protected by the First Amendment to the Constitution. Distribution of printed material does not include the right to solicit funds or contributions in exchange for the material distributed.
 . . . .ial
 You inquired specifically about restrictions upon the type of activity you propose to conduct. Is our understanding, that your representatives present printed material to individuals and solicit from that person (Sic ) a "donation" or "contribution" in return for the material? If this is a fair characterization of your method of operation, this would be clearly a business activity. Engaging in or soliciting any business in parks except in accordance with provisions of a permit, contract, or other written agreement with the United States, except as may be specifically authorized under special regulations applicable to a park, is prohibited.
 Apparently, ISKON attempts to utilize national parklands in the performance of Sankirtan resulted in the Department of the Interior, Office of the Solicitor, taking notice and issuing a memorandum on the application of various Park regulations to ISKON activities. This memorandum indicated that
 (s)ection 2.21 is a prior restraint on expression and must not be interpreted broadly. We interpret section 2.21 as applying to group or individual expressions of views that, due to their size or their potential for attracting a crowd, are likely to create unusual burdens on Park System resources or management capabilities. For example, one or two people distributing literature would not be required to obtain a permit under section 2.21. On the other hand, five people engaged in chanting, singing, preaching, and sale of religious literature would require a permit. In each particular instance, responsible judgment must be exercised. . . . We also recommend that, absent extenuating circumstances, no permit should be denied and no arrests should be made for persons engaged in First Amendment activities without prior consultation with the appropriate regional or field solicitor.
 This memorandum was circulated to each of the Park Services areas within the Western Region around April 30, 1976.
 Attached to the memorandum is a letter responding to a request by ISKON for permission from the Park Service to distribute literature, solicit donations, and engage in chanting and other proselytizing activities. The response from the Solicitor's Office recognizes that such activities are protected by the first amendment, but are subject to regulation which only imposes "incidental limitations" on the exercise of free speech. The letter further notes:
 Turning to existing regulations, we note that there is no outright prohibition of the activities in which you intend to indulge. Begging is prohibited by 36 C.F.R. § 2.4(a) and commercial soliciting is prohibited by 36 C.F.R. § 2.4(c). Neither of these provisions, however, would apply to First Amendment activities in the context you have described. (Citations omitted.) On the other hand, the activities you have described may require a permit under 36 C.F.R. § 2.21 . . . if group participation is involved.
 . . . We construe section 2.21 as applying to group or individual expressions of view that, due to their size or potential for attracting a crowd, impose unusual burdens on Park System resources and management. The standards in this regulation for issuance of a permit are based on neutral principles, and they do not vest unbridled discretion in the Service. . . .
 Accordingly, you should contact the superintendent of each Park System unit in which you intend to engage in religious activities. The superintendent can determine whether a permit is needed, and, if necessary, a permit may then be issued to you under 36 C.F.R. § 2.21, conditioned as necessary to protect park resources and other legitimate government interests.
 
 
 [4]
 Because of our disposition based on the doctrine of ripeness, we do not reach the merits of the first amendment issues addressed by the district court. See part II Infra
 
 
 [5]
 The new 36 C.F.R. § 2.39 provides in relevant part:
 (a) The sale or distribution of printed matter is permitted within park areas, provided a permit to do so has been issued by the Superintendent, and provided further that the printed matter is not solely commercial advertising.
 . . . .sal
 (c) The Superintendent shall, without unreasonable delay, issue a permit on proper application unless:
 (1) A prior applicant (Sic ) for a permit for the same time and location has been made which has been or will be granted and the activities authorized by that permit do not reasonably permit multiple occupancy of the particular area; or
 (2) The sale or distribution will present a clear and present danger to the public health or safety; or
 (3) The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for; or
 (4) The location applied for has not been designated as available for the sale or distribution of printed matter; or
 (5) The activity would constitute a violation of an applicable law or regulation.
 If an application for a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial clearly set forth.
 (d) The Superintendent shall designate on a map, which shall be available for inspection in the Office of the Superintendent, the locations within the park area that are available for the sale or distribution of printed matter. Locations may be designated as not available only if the sale or distribution of printed matter would:
 (1) Cause injury or damage to park resources; or
 (2) Unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic, or commemorative areas; or
 (3) Unreasonably interfere with interpretive, living history, visitor services, or other program activities or with the administrative functions of the National Park Service; or
 (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors.
 (e) The permit may contain such conditions as are reasonably consistent with protection and use of the park area.
 . . . .per
 (h) The sale or distribution of printed matter without a permit, or in violation of the terms or conditions of a permit, is prohibited.
 (i) Any permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, which constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made, to be followed by written confirmation.
 
 
 [6]
 Because this finding of fact is not clearly erroneous, we may not substitute our evaluation of the evidence as appellants would have us do. See Fed.R.Civ.P. 52(a)