VOLUNTARY ASSOCIATION OF RELIGIOUS LEADERS, CHURCHES, AND ORGANIZATIONS, et al., Plaintiffs,

v.

Governor John WAIHEE, et al., Defendants.

No. 91–00712 ACK.

United States District Court, D. Hawaii.

July 10, 1992.

---

Edward J. Bybee, Bybee Chang & Rulon, Lloyd James Hochberg, Jr., Donald A. Beck, Robert R. Taylor, Beck & Taylor, Honolulu, Hawaii, for plaintiffs.

Warren Price, III, Atty. Gen., State Atty. Gen., Steven S. Michaels, Girard D. Lau, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

Carl M. Varady, American Civil Liberties Union of Hawaii Foundation, Karen 1 Sloat, The Christian Legal Society of Hawaii, Honolulu, Hawaii, Christian Legal Society, Annandale, Va., Steven T. McFarland, Christian Legal Society's Center for Law & Religious Freedom, Redmond, Wash., Frederick W. Claybrook, Jr., Shawn N. Sullivan, Crowell & Moring, Washington, D.C., amicus curiae.

## ORDER DISMISSING THE CASE AS NOT RIPE

KAY, Chief Judge.

### I. BACKGROUND

The Hawaii state legislature has declared that sexual orientation discrimination in employment is against public policy. *See,* HRS § 368–1. In furtherance of that policy, the legislature amended HRS § 378–2 to include "sexual orientation" as a class protected from discriminatory employment practices. Plaintiffs bring this action seeking to have the 1991 amendment to HRS § 378–2 declared in violation of their First Amendment speech and religious constitutional rights. For the reasons stated herein, the Court finds that this case does not present a live controversy. Consequently, the Court must dismiss the complaint on ripeness grounds. In dismissing the case as non-justiciable, the Court has not reached the merits of Plaintiffs' constitutional claims and the dismissal is without prejudice. Nonetheless, even if this case were justiciable, because the constitutional questions presented turn on unsettled issues of Hawaii state law, the Court would be compelled to abstain from deciding those questions under the Ninth Circuit's decision in *Burdick v. Takushi,* 846 F.2d 587 (9th Cir.1988).

Plaintiffs in this case are: (1) Voluntary Association of Religious Leaders, Churches, and Organizations, an association of various Hawaii churches and religious leaders, many of which have employees; (2) Shepherd's Hill, an independent Christian pre-school not controlled by any particular religious organization; (3) Niking Corp.; and (4) David Kim, an individual. All Plaintiffs "sincerely believe[ ] that acts of homosexuality and bisexuality are immoral, learned behaviors which are not immutable traits" and that the amended statute violates their First Amendment speech and religious rights. Defendants are the Governor and Attorney General of the State of Hawaii, as well as the members of the Hawaii Civil Rights Commission.

In 1991, the Hawaii legislature amended Hawaii's employment discrimination law to include a prohibition against employment discrimination on the basis of sexual orientation. The new law provides, in part:

It shall be an unlawful discriminatory practice:

(1) Because of race, sex, *sexual orientation*, age, religion, color, ancestry, handicapped status, marital status, or arrest and court record:

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;

. . . . .

(C) For any employer ... to print, circulate, or cause to be printed or circulated any statement, advertisement, or publication or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification, or discrimination;

. . . . .

. . . . .

(3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or attempt to do so;

HRS § 378-2 (emphasis supplied) (§§ 378-2(1)(A), (1)(C), and (3) will be collectively referred to the "Statute" or the "Hawaii Law"). The Statute also provides for numerous exceptions including a religious exception provision, which provides:

Nothing in this part shall be deemed to:
(5) Prohibit or prevent any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised, or controlled by or in connection with a religious organization, from giving preference to individuals of the same religion or denomination or from making such selection as is calculated by the organization to promote the religious principles for which it is established or maintained.

HRS § 378-3 (hereinafter the "Religious Exception"). The Hawaii Civil Rights Commission is empowered with enforcing the provisions of Chapter 378. *See*, HRS § 378-4. Plaintiffs attack Chapter 378 on various grounds mostly stemming from the First Amendment. Primarily, Plaintiffs allege that the statute impermissibly infringes upon their rights to free exercise of religion and free speech. Defendants have made numerous representations regarding the scope of the Hawaii Law and its exceptions. These concessions are discussed in more detail below; however, Defendants have essentially stated that the Statute is not enforceable against Plaintiffs.

Defendants move for judgment on the pleadings, or in the alternative, for summary judgment. In addition to arguing substantive grounds for upholding the statute, Defendants argue that the case is nonjusticiable, and that if it is justiciable, this Court should abstain. At the hearing, the Court limited argument to the justiciability and abstention issues. For the following reasons, the Court grants the Defendants' motion and dismisses Plaintiffs' claims as not ripe.

## III. DISCUSSION

### A. JUSTICIABILITY

#### 1. *Standing.*

In order to invoke this Court's jurisdiction, Plaintiffs must, at the very least, satisfy "the injury-in-fact requirement imposed by Article III of the Constitution." *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C.Cir.1984) (Scalia, J.).

[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. The injury or threat must be distinct and palpable, direct, and both real and immediate, not conjectural or hypothetical.

*Id.* (citations and quotation marks omitted). The standing doctrine is concerned with the issue of *who* is the proper party to bring suit challenging a statute. In determining whether Plaintiffs have standing, a court should look to the nature of Plaintiffs' injury, not the legal theories on which they rely. "The requirement of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

The Supreme Court has held that when a statute chills First Amendment expression, the people targeted by the statue have standing to mount a facial attack of that statute. *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). In *American Booksellers*, the Supreme Court considered plaintiffs' standing to bring a pre-enforcement challenge to Virginia's child obscenity law.[1] After discussing the "injury in fact" standing requirement, a unanimous Court[2] stated,

> [t]hat requirement is met here, as the law is aimed directly at plaintiffs, who, if their interpretation of the law is correct, will have to take the significant and costly compliance measures or risk criminal prosecution.

*Id.* 484 U.S. at 392, 108 S.Ct. at 642. The Court did not stop here, but went on to state an exception to the rigid "injury in fact" requirement. The Court said that even if plaintiffs did not meet the "injury in fact" requirement, they satisfied the First Amendment standing exception. The Court spelled out the exception as follows:

> [l]itigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption

that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Id.* 484 U.S. at 392, 108 S.Ct. at 643 (quotation marks and citations omitted). The Court held that this exception applied to plaintiffs.

The Court finds it unnecessary to make a definitive finding on the standing issue, because, as discussed *infra*, Plaintiffs fail to meet the separate justiciability requirement of ripeness.

### 2. *Ripeness.*

■ While standing is concerned with *who* is a proper party to litigate a particular matter, ripeness determines *when* that litigation may occur. The ripeness doctrine seeks to avoid litigation of matters that are premature for review because the injury is speculative and may never occur. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). In evaluating whether a particular matter is ripe for judicial resolution, the Court should "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

■ A finding of standing, by itself, is insufficient to render a case ripe for judicial resolution. *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972). In *Gilligan*, after noting that the plaintiffs "may well meet the technical requirement of standing," the Supreme Court stated,

> This Court has recognized in the past that even when jurisdiction exists it

---

**1.** Virginia had amended its statute prohibiting sale of materials "harmful to juveniles" to include punishment of those who "display for commercial purpose[s]" such materials. *Id.* 484 U.S. at 386, 108 S.Ct. at 639–40.

**2.** Justice Stevens concurred in part and dissented in part. However, Justice Stevens agreed

with the Court's Article III analysis and dissented only from "the Court's refusal to ask the [additional certified] question that [he had] proposed." *Id.* 484 U.S. at 399, 108 S.Ct. at 646 (Stevens, J., concurring in part and dissenting in part).

should not be exercised unless the case tenders the underlying constitutional issues in clean-cut and concrete form. [Citation]. Problems of prematurity and abstractness may well present insuperable obstacles to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present.

*Id.* 406 U.S. at 588, 92 S.Ct. at 1719 (citations and quotation marks omitted).

Plaintiffs' arguments in this case are fact-specific. That is, they allege that certain conduct is outlawed by the Statute. Accordingly, in applying the ripeness doctrine to this case, the Court focuses upon whether the record contains the necessary clear-cut and concrete facts essential to judicial resolution.

An examination of the record reveals that Plaintiffs' claims are not fit for judicial resolution. By virtue of the newness of the sexual orientation amendment, effective March 21, 1991, Plaintiffs have not been subject to the Statute's application, and the State has not threatened its application to Plaintiffs.

The ripeness issue is complicated by Defendants' concessions on the proper scope of the Statute and its various exceptions. In *American Booksellers*, the Court noted that Virginia "ha[d] not suggested that the newly enacted [juvenile obscenity] law will not be enforced." *Id.* 484 U.S. at 393, 108 S.Ct. at 643. In this case, however, Defendants have conceded that the Hawaii Law is, in virtually all instances, inapplicable to Plaintiffs. Nevertheless, the Court notes that the Attorney General does not bind the state courts or the Hawaii Civil Rights Commission. *See, Id.* 484 U.S. at 395, 108 S.Ct. at 644. While the Court in no way bases its decision on the Defendants' construction of the Statute and its exceptions—Plaintiffs' allegations are independently insufficient to create a ripe controversy—Defendants' interpretation further indicates that there is no live controversy before this Court.

In asserting that Plaintiffs' claims are not ripe, Defendants, in their memorandum filed May 27, and in open court, have made the following representations and acknowledgements to the Court regarding the scope of the Hawaii Law and its exceptions:

1. For-profit corporations such as Plaintiff Niking Corporation may be exempted under the bona fide occupational qualifications exception ("BFOQ Exception"), HRS § 378-3(2), in discriminating against employees on the basis of their sexual orientation where such qualifications are reasonably necessary to the normal operation of the business and which have a substantial relationship to the functions and responsibilities of the prospective or continued employment. Likewise, the BFOQ Exception may apply to the other Plaintiffs. Defendants' May 27 Reply Memorandum at 8.

2. The Religious Exception and the BFOQ Exception apply to the workplace publication provision (HRS § 378-2(1)(C)) and the aiding and abetting provision (HRS § 378-2(3)). Thus, where either of those exceptions are operative, Plaintiffs or others would not be under the restrictions of the workplace publication provision or the aiding and abetting provision. *See,* Defendants' May 27 Reply Memorandum at 8.

3. The Statute does not ban discussions, and thus *a fortiori* does not ban preaching, about the immorality of homosexuality. *See,* Defendants' May 27 Reply Memorandum at 8–9.

4. Plaintiffs may discriminate against illegal conduct by homosexuals, or, when appropriate, on the basis of health concerns such as AIDS. *See,* Defendants' May 27 Reply Memorandum at 9; and statements made in open court.

5. Plaintiffs Shepherd's Hill and Voluntary Association are sufficiently "connected" "with a religious organization," to qualify under the Religious Exception, or they have rights as religious organizations themselves under the Religious Exception. *See,* Defendants' May 27 Reply Memorandum at 10, 57.

6. Discrimination in hiring of a non-clergy employee may be practiced if such discrimination has to do with promoting the religious principles of the religious organi-

zation. HRS § 378–3(5). *See,* Defendants' May 27 Reply Memorandum at 11.

7. The term "selection" appearing in the Religious Exception, "must be interpreted broadly to include any employment action, whether it be hiring, firing, promotion, the setting of compensation, working conditions, benefits, or issuing statements or making inquiries in connection with prospective employment, etc." *See,* Defendants' May 27 Reply Memorandum at 12.

8. Conduct of an employee of a religious organization, consistent with the organization's approach to homosexuality, such as conveying his anti-homosexual views to fellow employees, would fall within the Religious Exception. Statements made in open court.

9. The restrictions on publications and other communications in HRS § 378–2(1)(C) are limited to publications made "in connection with prospective employment" and do not prohibit anti-homosexual workplace speech including, but not limited to, "prayer sessions, distribution of religious tracts, dogma, or proselytization on the job." Defendants' Reply Memorandum at 13–14.

10. HRS § 378–2(3) (the aid or abet provision) also does not apply to "mere speech" such as "proselytization or advocacy of the evils of homosexuality." Defendants' Reply Memorandum at 13–14. Statements to the effect that "homosexuals are evil and society would be better off without them would be protected speech." Defendants' Reply Memorandum at 60. In addition, even advocacy of actual discrimination would not fall within § 378–2(3)'s purview since the aiding and abetting provision must be read in light of *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) (prohibitions against advocating for a violation of law constitutional "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.").

11. The Attorney General's previous interpretations of the scope of the Religious Exception were too restrictive. Defendants' Reply Memorandum at 9–13.

Defendants' concessions notwithstanding, an examination of Plaintiffs' challenges to the Hawaii Law indicates that there is no live controversy before the Court. The *amicus curiae* brief of the Christian Legal Society ("CLS Brief") provides compelling evidence that this case lacks a concrete and definite factual setting. In its brief, the CLS invents hypothetical "Situations," numbering them one through four. These situations are, *ab initio,* hypothetical. Although several of the Plaintiffs state that they "would" engage in activities similar to the "Situations" described in the CLS brief, these claims are purely speculative and may never occur. It is exactly this species of hypothetical application that the ripeness doctrine precludes federal courts from engaging in.

An example of the ephemeral nature of Plaintiffs' challenge to the Statute is illustrated by Plaintiffs' and their *amicus'* arguments that HRS § 378–2(A) is unconstitutional. That Section forbids any employer from making an adverse employment decision on the basis of an employee's sexual orientation but § 378–3(5), the Religious Exception, exempts, *inter alia,* religious organizations in certain instances.

Plaintiffs claim that § 378–2(A) and the Religious Exception violate, *inter alia,* their rights to free exercise of religion; however, they fail to allege that they engage in any particular employment activities made illegal by the Statute. For example, the President and Director of Plaintiff Shepherd's Hill, a Christian preschool which requires all employees to be "born-again, Spirit-filled Christians" and "of good moral character," states in his affidavit that "based upon the religious tenets of the Christian faith . . ., [he] *would* not hire a homosexual." Affidavit of Andrew Stone, ¶ 14. at 5 (emphasis supplied). The plain language of Mr. Stone's proclamation indicates that he is not now faced with the decision of whether to hire a homosexual. Without a concrete factual background or application of the Statute, this Court would be required to speculate as to the positions within the preschool which might be involved in such a decision. In essence,

Plaintiffs ask this Court to rule on the constitutionality of the Hawaii Law based on a hypothetical future event that may never occur.[3]

In ruling upon the constitutionality of § 378-2(1)(A) the Court would have to consider whether the Religious Exception applied not only to the hypothetical hiring of janitors, groundskeepers, secretaries, file clerks, messengers, etc., but also to the hypothetical hiring of numerous other positions. Absent a definite and concrete factual application, or threatened application, of the Statute, the Court is ill-equipped to decide such questions in a vacuum. To consider the issue of the Hawaii Law's constitutionality, the Court would have to "entangl[e itself] in abstract disagreements" concerning the applicability of the Statute.[4]

The hypothetical and abstract nature of Plaintiffs' challenge on § 378-2(1)(A) is made even more illusory by the Defendants' most recent position on that provision's application to an independent christian preschool. As previously mentioned, Defendants now concede that an independent christian preschool like Shepherd's Hill would be exempt from the Statute's application under the Religious Exception. Defendants state that Shepherd's Hill "may very well qualify" under the Religious Exception because it is "organized ... to provide preschool education to children ... in a Christian setting." Defendants' Reply Memorandum at 57. Thus, Defendants take the position that the Hawaii Law will not be applied to Plaintiffs' Shepherd's Hill or, for that matter any of the Voluntary Association Plaintiffs. Even though Defendants' position does not bind this Court and the Court does not base its ripeness decision thereon, Defendants' interpretation of the law lends additional force to the conclusion that this Court's consideration of the constitutionality of the Statute would be abstract and hypothetical.

Plaintiffs also challenge § 378-2(3) which makes it illegal for "any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce" any discriminatory practice, "or attempt to do so." HRS § 378-2(3). However, Plaintiffs again fail to allege that they are engaging in, or plan to engage in, any activities that would subject them to enforcement of the Statute. In an affidavit, Gary Kutil, a pastor of Oahu Christian Center, states that it is his job to preach to people that homosexuality is wrong. He states that he "would" preach to his employees that homosexuality is wrong. Affidavit of Gary Kutil, ¶ 21, at 7–8. He also states that if an employer, as a member of Pastor Kutil's congregation, sought advice regarding a homosexual employee, he would counsel that employer to convince the employee to accept God's word and renounce homosexuality. *Id.*, ¶¶ 13–14 at 4–5.

It is again apparent that Pastor Kutil is not now faced with this circumstance. Any application of the Statute to him is purely speculative and doubtful. It would be extremely difficult, if not impossible, for the Court to conduct an adequate analysis of Plaintiffs' challenge based on Pastor Kutil's affidavit statements. The Pastor has not provided the Court with the content of what he would say to a homosexual employee or an employer seeking counseling. Without such a record, the Court would have to speculate as to what the Pastor would say if confronted with an appropriate situation. Thus, the constitutional analysis would depend on the Court's *ad*

---

3. Mr. Stone's affidavit is illustrative of all Plaintiffs' claims. For example, the same factual analysis also applies to Plaintiff Niking Corp. *See, e.g.,* Affidavit of Robert L. King, ¶¶ 12–13 at 4–5. In the affidavit he states that, as President of the Corp., King "would" counsel a homosexual that his/her behavior is a sin against God and counsel him/her to repent. If the homosexual repented, King "would" hire him into a management position; if the person did not repent King "would not" hire him/her.

4. As discussed in the preceding footnote, although this analysis has been limited to Shepherd's Hill, the same concerns would arise when the Court considers § 378-2(1)(A)'s application to any of the churches or other organizations constituting Plaintiff Voluntary Association. *See, e.g.,* Affidavit of Woodrow Yashuhara, ¶ 11 at 4 (Mr. Yashuhara, a religious leader and Voluntary Association Plaintiff, *"would"* "employ" or "fire" people on the "basis of moral principles" which include homosexuality.)

*hoc* creation of the Pastor's sermon or counseling speech on homosexuality. Significantly, the Pastor does not say that he would instruct an employer to immediately fire a homosexual employee, making the application of the aiding and abetting portion of the Statute to him even more unlikely. Without a credible threat of enforcement, this Court does not have an adequate record to consider Plaintiffs' claims.

Finally, Plaintiffs challenge HRS § 378–2(1)(C), which prohibits an employer to print, circulate, advertise, or make any inquiry about sexual orientation "in connection with prospective employment." *See,* HRS § 378–2(1)(C).

In his affidavit, Andrew Stone states that all employees of Shepherd's Hill are required to "be born-again, Spirit-filled Christians" and "give evidence of good moral character" consistent with biblical teachings which condemn homosexuality as immoral. Once again, Plaintiffs have failed to furnish the Court with a concrete factual circumstance to evaluate a challenge. Although it requires all prospective employees to be of the Christian faith, Shepherd's Hill is not charged with a violation of the Statute nor threatened with its enforcement. As discussed above, since the Religious Exception would probably apply[5] to Shepherd's Hill, it is unlikely that the school will be subject to enforcement of the Hawaii Law and there is no live controversy before the Court.

Additionally, HRS § 378–3(2) provides for a "bona fide occupational qualifications" exception ("BFOQ Exception") to the Hawaii Law. The exception provides that nothing in the Hawaii Law shall be deemed to:

> Prohibit or prevent the establishment and maintenance of bona fide occupational qualifications reasonably necessary to the normal operation of a particular business or enterprise, and which have a substantial relationship to the functions

and responsibilities of the prospective or continued employment.

HRS § 378–2(1)(C).

As Defendants acknowledged, Shepherd's Hill would probably fall within the BFOQ Exception. Mr. Stone has stated that "the primary purpose of Shepherd's Hill [is] to provide a strong Christ-centered, Bible-based learning environment for preschool children." Affidavit of Stone, ¶ 5 at 2. Hiring only Christians with religious ideologies consistent with the Shepherd's Hill by-laws would appear to be a bona fide occupational qualification of the preschool. Since the function of the school is to provide children with a Bible-based education, hiring of non-homosexual Christians would likely bear a "substantial relationship to the functions and responsibilities" of Shepherd's Hill's employees.

Shepherd's Hill is a prime candidate for exemption from the Statute under either the Religious Exception or the BFOQ Exception. Consequently, Shepherd's Hill does not present a live controversy to this Court. Indeed, it seems unlikely that the Statute will be applied to the school, given the exceptions discussed above. Without any threat of enforcement, the Court would have to speculate as to the application of the Statute to Shepherd's Hill.

Plaintiffs argue that under *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), their claims are ripe. In *Lake Carriers' Association* the Supreme Court found ripe a challenge to a statute forbidding discharge of sewage from boats even though prosecutions under the Michigan law were not definitely imminent. Michigan state officials had announced that they would not enforce the law until land-based pump-out facilities were built, a process that would take a substantial amount of time. In holding that the case was ripe, the Court reasoned that it was inevitable that the law would be enforced and that the boat owners had to begin installing new facilities on their boats in anticipation of the time when

---

**5.** Because the Court does not consider the merits of Plaintiffs' constitutional challenges to the Hawaii Law and its exceptions, the Court is at places constrained to use phrases such as "would probably apply."

the law was implemented. *Id.* 406 U.S. at 508, 92 S.Ct. at 1756.

Contrary to Plaintiffs' assertions, *Lake Carriers' Association* is readily distinguishable from the instant case. In *Lake Carriers' Association*, Michigan officials conceded that enforcement of the statutory provisions against the plaintiffs was certain. *Id.* This fact was crucial to the Court's finding of ripeness. In this case, enforcement of the Hawaii Law to Plaintiffs is merely hypothetical, uncertain, and in all probability unlikely. Indeed, Defendants disclaim that the Statute will be applied to Plaintiffs. As is discussed above, it is unclear whether Plaintiffs are even engaging in any activities prohibited by the Hawaii Law. Moreover, given the two exceptions, discussed *supra*, application of the Statute to Plaintiffs is speculative. Further, one can infer from those exceptions that the Hawaii legislature intended that the Hawaii Law would be inapplicable to people in Plaintiffs' situation.

In summary, the issues raised by Plaintiffs are not purely legal, but instead are fact and application specific. Consideration of such issues necessitates a complete and well developed factual record lacking at this point in the case. To consider an application of the Statute, the Court would have to conjecture innumerable factual situations.

Indeed, this case presents a situation similar to that recently considered by the Supreme Court in *Renne v. Geary,* —— U.S. ——, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). In *Renne*, voters and Republican and Democratic party committee members challenged the constitutionality of a provision in the California state constitution which prohibited political parties from endorsing candidates for nonpartisan offices. The Court held that the plaintiffs' claims were not ripe for adjudication. The Court found that plaintiffs' declared intent to endorse candidates in *future* elections presented "no factual record of an actual or imminent application of [the provision] sufficient to present the constitutional issues in clean-cut and concrete form." *Id.* —— U.S. at ——, 111 S.Ct. at 2339 (internal

quotation marks and citations omitted). The Court reasoned that generalized statements of a desire to endorse a candidate in the future deprived the Court of the opportunity to examine the precise language of the endorsement. *Id.* The Court stated:

> Determination of the scope and constitutionality of legislation in advance of its immediate adverse affect in the context of a concrete case involves too remote and abstract an injury for the proper exercise of the judicial function.

*Id.* —— U.S. at ——, 111 S.Ct. at 2340 (quotation marks and citations omitted).

In conclusion, the Court noted that overbreadth challenges should not be entertained without the benefit of a ripe case which presents a well-developed factual record. This rule serves the function of preventing the overbreadth doctrine from being used as "a means of mounting gratuitous wholesale attacks upon state ... laws." *Id.* (internal quotation marks and citations omitted).

As in *Renne*, Plaintiffs in this case express a desire to engage in abstract future conduct. That is, Plaintiffs claim that they *would* act in certain ways if they were faced with the prospect of an employment decision involving a homosexual. Plaintiffs ask the Court to consider the "scope and constitutionality of legislation in advance of its immediate adverse effect." *See, id.* In this situation, the Court lacks the requisite facts upon which to properly exercise its judicial function. Moreover, under *Renne*, the Court should not entertain Plaintiffs' overbreadth challenge to the Hawaii Law. Consistent with the Supreme Court's admonishment in *Renne*, this Court will not proceed to an overbreadth challenge before it has an appropriately developed factual setting under which it may consider the validity of the Statute. *See, id.*

Finally, the Court further finds that its decision today will not cause hardship to the Plaintiffs. None of the Plaintiffs are now charged under any of the challenged provisions of the Hawaii Law. Moreover, as discussed above, it is questionable whether they will be so charged in the future. In light of the Defendants' conces-

sions regarding the scope of the Hawaii Law, Plaintiffs may do precisely what they claim they "would" do in various situations. The Court is confident that the Defendants will abide by their representations to this Court and apply the Hawaii law in accordance with those representations as set forth in this Order.

## B. ABSTENTION

In closing, the Court notes that even if the Plaintiffs presented a live controversy, the Court would not have been able to reach the merits of Plaintiffs' constitutional claims under the doctrine of *Pullman* abstention. The Supreme Court has described *Pullman* abstention as follows:

[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.

*Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975) (citing *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). *Pullman* abstention is particularly appropriate in cases where a state statute has not been interpreted by any state court. In *Bellotti v. Baird*, 428 U.S. 132, 146–47, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) the Supreme Court noted:

As we have held on numerous occasions, abstention is appropriate where an *unconstrued* state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.

*Id.* (emphasis supplied; quotation marks and citations omitted); *see also, Lake Carriers' Association*, 406 U.S. at 498, 92 S.Ct. at 1758 (abstention appropriate where the state statute "has not been construed in any Michigan court").

The Ninth Circuit has adopted a three-part test to determine whether *Pullman* abstention is appropriate. In *Burdick v. Takushi*, 846 F.2d 587, 588 (9th Cir.1988), the Court stated,

Our circuit has adopted a three part test to determine whether *Pullman* abstention is warranted. First, the proper resolution of the state law question at issue must be uncertain. Second, a definitive ruling on the state issue must potentially obviate the need for constitutional adjudication by the federal court. Third, the complaint must touch upon a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

*Id.* (quotation marks and citations omitted).

■ Even if Plaintiffs presented a ripe controversy, this Court would be compelled to abstain under the *Burdick* test. First, because of the newness of the amendments to the Statute, there is no Hawaii case law interpreting its or its exceptions' scope. Plaintiffs' claims are premised upon the ambiguity of the Hawaii sexual orientation legislation and the Religious Exception thereto. The proper interpretation of the Statute and its exceptions is uncertain under Hawaii state law. Second, because Plaintiffs' claims are based on the ambiguities of the Statute and the Religious Exception, an authoritative construction by the Hawaii Supreme Court will potentially obviate the need for this Court to hear many, if not all, of Plaintiffs' constitutional claims. Third, the Hawaii state legislature has proclaimed that sexual orientation discrimination is against state public policy. Because the Hawaii legislature chooses to join Massachusetts and Wisconsin as the only states which extend protection to a class of persons unprotected by the analogous federal legislation (Title VII), the Hawaii Law touches upon sensitive areas of Hawaii's social policy.

## III. CONCLUSION

Based on the foregoing discussion, the Court finds that Plaintiffs have not presented a live controversy. Accordingly, the Court dismisses without prejudice Plaintiffs' claims as not ripe. As in *Renne*, "the free speech [and free exercise of religion]

issues argued in the briefs filed here have fundamental and far-reaching import. For that very reason, [the Court] cannot decide the case based upon the amorphous and ill-defined factual record presented to [it]." *Renne,* —— U.S. at ——, 111 S.Ct. at 2340. Since the Court has decided that it must dismiss this case on the ground that there is no ripe controversy, the Court has not reached a consideration of the merits of Plaintiffs' constitutional claims.

MOTION GRANTED.