The PRESBYTERY OF NEW JERSEY OF the ORTHODOX PRESBYTERIAN CHURCH, Calvary Orthodox Presbyterian Church of Wildwood, and Rev. David B. Cummings, Plaintiffs,

v.

James FLORIO, Robert Del Tufo, Marilyn Flanzbaum, Roman Angel, Betty Carson, Olga L. Vasquez–Clough, Felton Lingo, Sr., Reinhold W. Smyczek, Casey Tam, C. Gregory Stewart, John Doe(s), and Jane Doe(s), Defendants.

Civ. A. No. 92–1641 (WGB).

United States District Court,
D. New Jersey.

Aug. 10, 1993.

Thomas S. Neuberger, Wilmington, DE, and Richard J. Traynor, Morristown, NJ, for plaintiffs.

Robert J. Del Tufo, Atty. Gen. of N.J. by William H. Lorentz, Charles S. Cohen, Andrea M. Silkowitz, Div. of Law, Newark, NJ, for State defendants.

Evans, Osborne & Kreizman by Lewis H. Robertson, Little Silver, NJ, for amicus curiae, the American Civ. Liberties Union of N.J.

Montgomery, McCracken, Walker & Rhoads by Louis A. Petroni, Cherry Hill, NJ, for Religious amicus curiae [1].

1. James E. Andrews as Stated Clerk of the Presbyterian Church (U.S.A.) General Assembly; the Diocesan Council of the Episcopal Diocese of Newark, Right Rev. John S. Spong, Bishop of the Episcopal Diocese of Newark; the Lutheran Office of Governmental Ministry in New Jersey; the New Jersey–West Hudson Valley Council of the Union of American Hebrew Congregations; the New Jersey Synod Council of the New Jersey Synod, Evangelical Lutheran Churches in Amer-

## *OPINION*

BASSLER, District Judge:

Defendants James Florio, Robert Del Tufo, Marilyn Flanzbaum, Roman Angel, Betty Carson, Olga L. Vasquez–Clough, Felton Lingo, Sr., Reinhold W. Smyczek, Casey Tam, and C. Gregory Stewart move to dismiss this action as non-justiciable. For the following reasons, the Court will grant the motion.

### I. *Background*

Plaintiffs, the Presbytery of New Jersey of the Orthodox Presbyterian Church (the "Presbytery"), Calvary Orthodox Presbyterian Church of Wildwood ("Calvary"), and Rev. David B. Cummings ("Cummings"), bring this constitutional challenge to certain recently-amended provisions of New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1 *et seq.*, that prohibit discrimination based on "affectional or sexual orientation." Defendants are the Governor of New Jersey, various state officials charged with enforcing state law, and unnamed private individuals who Plaintiffs fear will sue them under the LAD.

### A. The Law Against Discrimination

New Jersey's LAD, which was enacted in 1945, prohibits discrimination in employment, labor organization membership, public accommodations, and real estate, financial and business transactions. Prior to 1992, the LAD applied to discrimination based on race, creed, national origin, age, sex, marital status, and several other characteristics. *See, e.g.,* N.J.S.A. 10:5–3 (Supp.1978). In 1992, the LAD was amended to include as a protected category "affectional or sexual orientation," which is defined as "male or female heterosexuality, homosexuality or bisexuality by inclination, practice, identity or expression, having a history thereof or being perceived, presumed or identified by others as having such an orientation." N.J.S.A. 10:5–5(hh) (1993).

ica; the New Jersey Council of Churches; and the United Church of Christ Office for Church in

The LAD makes it unlawful for an employer to discriminate against any individual because he or she possesses any of the enumerated characteristics or "to print or circulate or cause to be printed or circulated any statement ... which expresses, directly or indirectly" such discrimination. N.J.S.A. 10:5–12(a), (c) (1993). Similar prohibitions apply to places of public accommodation. *See* N.J.S.A. 10:5–12(f) (1993). The statute also forbids any person from refusing to transact business with another person for a discriminatory reason. N.J.S.A. 10:5–12(l), (m) (1993).

In addition, the LAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5–12(e) (1993). A similarly-worded section makes it illegal

[f]or any person to aid, abet, incite, compel, coerce or induce the doing of any act forbidden by subsections l and m [which prohibit discrimination in business transactions], or to attempt or to conspire to do so. Such prohibited conduct shall include, but not be limited to:

(1) Buying from, selling to, leasing from or to, licensing, contracting with, trading with, providing goods, services, or information to, or otherwise doing business with any person because that person does, or agrees or attempts to do, any such act or any act prohibited by this subsection n.; or

(2) Boycotting, commercially blacklisting or refusing to buy from, sell to, lease from or to, contract with, provide goods, services or information to, or otherwise do business with any person because that person has not done or refuses to do any such act or any act prohibited by this subsection n.; provided that this subsection n. shall not prohibit refusals or other actions either pertaining to employee-employer collective bargaining, labor disputes, or unfair labor practices, or made or taken in connection with a protest of unlawful discrimination or unlawful employment practices.

Society.

N.J.S.A. 10:5–12(n) (1993). The LAD also forbids "any person whose activities are included within the scope of this act to refuse to post or display such notices concerning the rights or responsibilities of persons affected by this act as the Attorney General may by regulation require." N.J.S.A. 10:5–12(j) (1993).

The LAD provides, however, that "it shall not be an unlawful employment practice ... for a religious association or organization ... in following the tenets of its religion in establishing and utilizing criteria for employment of an employee." N.J.S.A. 10:5–12(a) (1993); *see* Statement of Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee, Senate No. 1608–L.1977, c.122 (stating that, under LAD, it is "lawful for a religious association or organization to use the 'tenets of its religion' in 'establishing and utilizing criteria' for hiring an employee."). The statute further states that it is not to be construed to apply to "any institution, bona fide club, or place of accommodation which is in its nature distinctly private; [or] to any educational facility operated or maintained by a bona fide religious or sectarian institution." N.J.S.A. 10:5–5(*l*) (1993). Moreover, it provides that

> nothing herein contained shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, in the sale, lease or rental or real property, from limiting admission to or giving preference to persons of the same religion or denomination or from making such selection as is calculated by such organization to promote the religious principles for which it is established or maintained.

N.J.S.A. 10:5–5(n) (1993).

A person discriminated against in violation of the LAD may obtain relief either by filing a complaint with the New Jersey Division of Civil Rights ("DCR") or by commencing suit in the New Jersey Superior Court without first filing an administrative complaint. N.J.S.A. 10:5–13 (1993). Moreover, "any individual who has been discriminated against" and "any organization which represents or acts to further the interests of individuals who have been discriminated against" have standing to enforce the provisions of the LAD. N.J.S.A. 10:5–38 (1993). The DCR is entitled to intervene in any private enforcement action. N.J.S.A. 10:5–13 (1993). The remedies authorized by the statute include awards of compensatory and punitive damages, fines and attorneys fees. *See* N.J.S.A. 10:5–3, 10:5–14.1a, 10:5–27.1 (1993). The Legislature has explicitly stated that the LAD is to be liberally construed. *See* N.J.S.A. 10:5–3 (1993).

### B. Plaintiffs' Challenge

The Orthodox Presbyterian Church (the "Church") is a small nationwide denomination with 19 member churches, including Calvary, and 2,113 members in New Jersey. The Presbytery is the governing body of the denomination, and Cummings is an ordained minister of the Presbytery and the pastor of a member church. The Church, which split from the Presbyterian Church (U.S.A.) in 1936 because of what it viewed as that church's doctrinal error, teaches that homosexuality, bisexuality and heterosexual sex outside of marriage are grievous sins. Plaintiffs therefore avow that they discriminate against homosexuals, bisexuals and heterosexuals engaged in sex outside of marriage and publicly condemn these practices.

The "affectional or sexual orientation" amendments to the LAD became effective on January 19, 1992. Three months later, on April 15, 1992, Plaintiffs commenced this action. Plaintiffs alleged that the following sections of the LAD, as amended, violated their First, Fifth, Ninth and Fourteenth Amendment rights: the provisions applicable to employers, N.J.S.A. 10:5–12(a) & (c), and public accommodations, N.J.S.A. 10:5–12(f); the "aid, abet, incite" provisions, N.J.S.A. 10:5–12(e) & (n); the notice-posting provision, N.J.S.A. 10:5–12(j); and the provisions regarding discriminatory refusals to do business, N.J.S.A. 10:5–12(*l*) & (m). Plaintiffs requested declaratory and injunctive relief.

On May 15, 1992, Plaintiffs sought a preliminary injunction against enforcement of the amended statute. On June 5, 1992, De-

fendants responded to Plaintiffs' motion and also filed the motion to dismiss now before this Court.

In response to the motion for preliminary restraints, the Director of the DCR submitted an affidavit setting forth the way in which the DCR, with the advice of the Attorney General, has interpreted the LAD's applicability to religious institutions. *See* Affidavit of C. Gregory Stewart dated June 4, 1992 ("Stewart Aff."). The Director stated that the DCR does not consider places of worship to be "public accommodations," and therefore the LAD provisions applicable to public accommodations have never been and would not now be applied to them. Stewart Aff., ¶ 9–10. The Director further stated, consistent with N.J.S.A. 10:5–12(a), that "a church or other place or institution whose purposes [sic] is housing religious worship, practice or activities" is not "subject to the LAD when it makes employment decisions based upon sincerely-held, First Amendment-protected, religious beliefs." *Id.*, ¶ 11. Moreover, due to "First Amendment concerns,"

> the Division has not in the past prosecuted and has no intention to prosecute [under N.J.S.A. 10:5–12(c), (e), (f), (j), (*l*) & (m)] essentially exempt churches for sincerely-held religious belief or practice, or speech consistent with such belief, or for a refusal to engage in certain speech or for following their religious tenets.... Hence, the Division would not even attempt to enforce those provisions in the circumstances of sincerely-held religious reasons such as plaintiffs express here....

*Id.*, ¶ 13.

The Director also made the following general statements:

> It has been the consistent construction and interpretation of the LAD that, consonant with constitutional legal barriers respecting legitimate belief and free exercise protected by the First Amendment, the State was not authorized to regulate or control religious worship, beliefs, governance, practice or liturgical norms, even where

ostensibly or colorably at odds with any of the LAD prohibited categories of discrimination.

> \*     \*     \*     \*     \*     \*

> Moreover, the Division has not and has no intention to engage in any determination or judgment as to what is or is not a "religious activity" of a church, or to determine what is or is not a "tenet" of religious faith. Within First Amendment limits, all of plaintiffs' claimed religiously-based free exercises of faith are unthreatened by a reasoned construction of the LAD consistent with its meaning and long enforcement history.

*Id.*, ¶¶ 10, 12.

After a hearing on June 19, 1992, this Court in an oral opinion denied Plaintiffs' preliminary injunction application.[2] The Court based the denial on two grounds: that the Plaintiffs failed to demonstrate a likelihood of success on the merits, and that they were unable to show that they would suffer irreparable harm if the requested relief were denied.

Plaintiffs immediately appealed to the United States Court of Appeals for the Third Circuit, which on December 14, 1992 affirmed the denial of the preliminary injunction. *Presbytery v. Florio,* No. 92–5339 (3d Cir. Dec. 14, 1992) (unpublished memorandum opinion). The Court of Appeals agreed that Plaintiffs were faced with no immediate threat of enforcement by the DCR. *Id.* at 9. It noted, however, the difficulty in assessing the threat posed by private enforcement actions:

> The plaintiffs have not adduced any direct evidence that any private party is contemplating a suit against them, but private parties often do not issue advance public statements regarding their intention to file civil actions. We also understand why the plaintiffs' fears are not allayed by the DCR's statutory right to intervene in any private lawsuit and by the DCR's nonbinding interpretation of the LAD.

---

**2.** The Court's oral opinion is unofficially reported at 60 FEP Cases 805, 1992 WL 414680 (D.N.J. 1992).

*Id.* at 11. Nevertheless, the court deemed it unnecessary to determine whether any private suit was imminent because it found that a preliminary injunction would not shield Plaintiffs from such a suit. *Id.* at 11–12. The court, however, "express[ed] no view as to the merits of the underlying claim." *Id.* at 13.

The parties agree that the DCR's representations and the decisions of this Court and the Court of Appeals have significantly narrowed the scope of this case. The constitutionality of only three provisions remains contested: N.J.S.A. 10:5–12(e), which makes it unlawful "[f]or any person ... to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so;" N.J.S.A. 10:5–12(n), which makes it illegal "for any person to aid, abet, incite, compel, coerce or induce" boycotts or refusals to do business; and N.J.S.A. 10:5–12(j), the notice-posting requirement. Plaintiffs challenge the "aid, abet, incite ..." language of Section 12(e) as a violation of pure speech, the boycott prohibition of Section 12(n) as impermissible content-based discrimination, and the posting requirement of Section 12(j) as a violation of freedom of conscience. *See* February 8, 1993 Transcript at 8–9. Plaintiffs concede, however, that in light of Defendants' representations, the applicability of even these sections to the two institutional plaintiffs, the Presbytery and Calvary, is no longer at issue. *See id.;* Plaintiff's Post–Argument Brief at 2.

## II. Discussion

■ Defendants make two arguments in support of their motion to dismiss. First, they contend that Plaintiffs' challenge is nonjusticiable, arguing both that Plaintiffs do not have standing to litigate this action and that their claims are not ripe for adjudication. Alternatively, they exhort this Court to abstain under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[3] However, because the Court agrees that the justiciability requirement of ripeness has not been satisfied in

this case, it is unnecessary to address Defendants' standing and abstention arguments.

■ The Constitution limits the jurisdiction of the federal courts to the resolution of actual "cases" and "controversies." U.S. Const. art. III, § 2. The case or controversy requirement must be satisfied in all actions, including declaratory judgment actions. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *see* 28 U.S.C. § 2201(a). It is this requirement that has engendered the justiciability doctrines of ripeness, which concerns when an action may be brought, and standing, which concerns who may bring a ripe action. *Armstrong World Indus., Inc. v. Adams,* 961 F.2d 405, 411 & nn. 12–13 (3d Cir.1992).

■ "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." *Renne v. Geary,* — U.S. —, —, 111 S.Ct. 2331, 2336, 115 L.Ed.2d 288 (1991). Plaintiffs, as the parties invoking this Court's jurisdiction, bear the burden of demonstrating that this case is justiciable. Because the federal courts' jurisdiction is constitutionally limited, it is presumed that jurisdiction is lacking unless "'the complainant clearly ... allege[s] facts demonstrating that he is the proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'" *Id.*

■ The ripeness doctrine seeks to prevent the courts "from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). "[R]uling on federal constitutional matters in advance of the necessity of deciding them [is to be avoided], to postpone judicial review where it would be premature." *Armstrong,* 961 F.2d at 413, 424 (citing *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936)). To determine whether a particular matter is ripe, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the

---

**3.** If *Pullman* abstention were appropriate, however, proper application of the doctrine would result in a stay and the retention of jurisdiction,

not in dismissal of the case. *See Zwickler v. Koota,* 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 393 n. 4, 19 L.Ed.2d 444 (1967).

parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. at 1515.

In this action, Plaintiffs seek declaratory and injunctive relief. Assessing the ripeness of a declaratory judgment action poses special problems. As the Supreme Court has observed,

> [t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The primary factors that the Third Circuit has considered in making this determination have been "the adversity of the interest of the parties, the conclusiveness of the judicial judgment, and the practical help, or utility of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir.1990); *see Armstrong*, 961 F.2d at 411.

■■■ It is not necessary for Plaintiffs to have suffered "a completed harm" to have a ripe controversy for purposes of a declaratory judgment action. *Armstrong*, 961 F.2d at 412. It is necessary, however, that Plaintiffs demonstrate a real and substantial probability that the feared future event will occur. *Id.* Moreover, the threat "must remain 'real and immediate' throughout the course of the litigation." *Salvation Army v. New Jersey Dep't of Community Affairs*, 919 F.2d 183, 192 (3d Cir.1990). Thus, if intervening events eliminate the threat, "the court must not address the now-speculative controversy." *Id.* In addition, there must be a showing that a declaratory judgment would be "a binding resolution of the matter," *Warner Cable Communications, Inc. v. Borough of Schuylkill Haven*, 784 F.Supp. 203, 208

(E.D.Pa.1992), and that it would likely affect the parties' plans of actions. *Step-Saver*, 912 F.2d at 648–49.

In their complaint, Plaintiffs allege that they

> have always in the past, presently do and since the 1992 amendments, have directly or directly discriminated against and made reasonable distinctions based upon homosexuality, bisexuality and heterosexual sex outside of marriage. For example, in New Jersey the plaintiffs express, speak and preach against homosexuality, adultery and fornication, calling it variously an abomination and sinful.... They also disseminate and circulate such speech and distinctions [sic] throughout New Jersey and the world.... [T]hey even print and disseminate materials condemning sexual sins.... Plaintiff, and their members, also inquire about the sexual practices of prospective employees and are continuing to do so despite the existence of the 1992 amendments....

Amended Complaint, ¶ 49; *see id.*, ¶¶ 51, 53. In addition, they state that they will refuse to post signs stating that they do not discriminate based on affectional or sexual orientation. *Id.*, ¶ 54. They further state that they "have always in the past, presently do and since the amendments have refused to knowingly buy from, contract with, or otherwise do business with persons on the basis of that person's homosexual, bisexual or heterosexual practices." *Id.*, ¶ 57.

However, Plaintiffs' allegations of their past discriminatory actions do not make this action ripe, given that they have not suffered any adverse consequences from that conduct. *See Renne*, —— U.S. at ——, 111 S.Ct. at 2338. Plaintiffs readily admit that they have openly discriminated despite the existence of the 1992 amendments, yet no enforcement action or private suit has been commenced against them as a result. Moreover, although Plaintiffs allege that they intend to engage in similar conduct in the future, without an actual or imminent threat of enforcement of the statute the constitutional issues are not presented in a sufficiently " 'clean-cut and concrete form' " to render this action ripe. *See id.* at ——, 111 S.Ct. at 2339.

■ Plaintiffs argue that this case is ripe because, although Defendants have conceded that they will not enforce the LAD against the institutional plaintiffs, they have not waived enforcement of the statute against Cummings or against the Church's individual members. The Court, however, disagrees with Plaintiffs' interpretation of Defendants' waiver as not including a waiver of enforcement against Cummings. The Defendants, recognizing the First Amendment concerns raised in this action, have represented that the LAD does not apply to and will not be enforced against Plaintiffs' religious worship, beliefs, practice, speech or refusal to speak. *See* Stewart Aff., ¶¶ 10–13. This Court reads these statements as clearly including Plaintiff Cummings. Accordingly, the Court sees no possibility of state enforcement against him.

■ The Court recognizes that the Defendants' waiver does not by its terms preclude state enforcement of the statute against the Church's individual members. Those members, however, are not plaintiffs in this action. A ripe declaratory judgment action requires "a 'real and immediate' threat of enforcement *against the plaintiff.*" *Salvation Army*, 919 F.2d at 192 (emphasis added). Moreover, even if the Church's members were parties, nothing in the record indicates any realistic threat that the state will enforce the amendments against them. Rather, Plaintiffs' professed fears of state enforcement of the LAD against their members appear to be based only on imagination or speculation, which is insufficient to create a ripe controversy. *See id.* (*citing Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)).

■ Plaintiffs also contend that this case is ripe because they remain subject to the possibility of private suits, which chills their exercise of their First Amendment rights. However, "where the plaintiff seeks a declaratory judgment with respect to the constitutionality of a state statute, even where the attack is on First Amendment grounds, there must be a 'real and immediate' threat of enforcement. . . ." *Salvation Army*, 919 F.2d at 192. Even a plaintiff alleging a chilling effect on his or her constitutional rights must show "a specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972). Mere allegations of a chilling injury that are "not substantiated by evidence [of] a present and concrete effect" are not enough. *Salvation Army*, 919 F.2d at 193.

Plaintiffs offer no evidence that the threat of a private suit has had, or will have, any discernible effect on their conduct. *See id.* In fact, they concede that since the enactment of the 1992 amendments, they have discriminated and spoken out against people based on their sexual orientation. Moreover, "the prospect that [Plaintiffs] will alter [their actions] . . . out of fear of such a suit seems highly unlikely." *Id.*

■ Plaintiffs also have not demonstrated a real and substantial probability that the litigation they fear will occur. *See Armstrong*, 961 F.2d at 412. Almost a year and a half has passed since the amendments' effective date and not a single private suit or administrative complaint has been filed. There is, moreover, no credible evidence that any person or organization is contemplating such an action. Although the Court recognizes that it is difficult to gauge the threat of a private enforcement action, the theoretical possibility that such a suit may at some point be filed against Plaintiffs by some unnamed and unknown private party is not enough to render this action ripe. *See Salvation Army*, 919 F.2d at 193.

■ Additionally, it is questionable whether the relief Plaintiffs seek would bind the unidentified private parties of whom Plaintiffs profess such fear. As the Third Circuit recognized in its December 14, 1992 decision, the issuance of an injunction in this case would not necessarily protect Plaintiffs from private suits. *Presbytery v. Florio*, No. 92–5339, slip op. at 11–12 (3d Cir. Dec. 14, 1992); *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969). That court also has questioned whether constitutional adjudication in a declaratory judgment action can bind non-participants. *See Salvation Army*, 919 F.2d at 193. Therefore, any decision in this lawsuit would likely not be "a

binding resolution of the matter." *Warner Cable,* 784 F.Supp. at 208.

Plaintiffs argue that this action is ripe for judicial determination because the issues presented are purely legal ones. The Court disagrees. As another United States District Court stated in a similar challenge to an anti-discrimination statute much like the LAD, "the issues raised by Plaintiffs are not purely legal, but instead are fact and application specific." *Voluntary Ass'n of Religious Leaders v. Waihee,* 800 F.Supp. 882, 890 (D.Hawaii 1992). Moreover, plaintiffs raising predominantly legal claims still must meet the case or controversy requirement. *Armstrong,* 961 F.2d at 421. "[T]he presence of a 'purely legal question' is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." *Id.* (quoting *Office of Communications of the United Church v. FCC,* 826 F.2d 101, 105 (D.C.Cir.1987)). Even a First Amendment overbreadth challenge "should not be entertained without the benefit of a ripe case[;]" otherwise, the overbreadth doctrine could be used improperly as " 'a means of mounting gratuitous wholesale attacks upon ... state laws.' " *Voluntary Ass'n of Religious Leaders,* 800 F.Supp. at 890 (quoting *Renne,* — U.S. at —, 111 S.Ct. at 2340).

Where, as here, the constitutionality of a state statute is at issue, also relevant to the ripeness inquiry is "the degree to which postponing federal judicial review would have 'the advantage of permitting state courts further opportunity to construe [the challenged provisions], and perhaps in the process "materially alter the question to be decided." ' " *Armstrong,* 961 F.2d at 412; *see Renne,* — U.S. at —, 111 S.Ct. at 2339. The amendments here at issue have yet to be construed by the New Jersey courts. In fact, regulations interpreting them have not even been promulgated by the DCR, and the signs that Plaintiffs state that they will refuse to post have not yet been published.

Finally, no "immediate and significant" hardship, *see Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 537 (3d Cir. 1988), will result to Plaintiffs from withholding court consideration at this time. In light of Defendants' representations, the Court is confident that they will not subject Plaintiffs now or in the future to enforcement of any of the challenged LAD provisions. As discussed above, the Court finds the mere existence of the private right of action to have no present effect on Plaintiffs, and the likelihood of private enforcement of the statute against them to be uncertain. Moreover, this dismissal is not on the merits of Plaintiffs' claims and thus is necessarily without prejudice.

Therefore, the Court finds that this case does not present a ripe controversy. The Court recognizes the importance of the First Amendment issues raised by Plaintiffs in this case. However, it is precisely because of their "fundamental and far-reaching import" that this Court cannot decide these issues on "the amorphous and ill-defined factual record presented...." *Renne,* — U.S. at —, 111 S.Ct. at 2340. "Rules of justiciability serve to make the judicial process a principled one[,]" and a departure from those rules would result in a decision in this case "lack[ing] in the clarity and force which ought to inform the exercise of judicial authority." *Id.*

### III. Conclusion

For the foregoing reasons, the Court dismisses this action as non-justiciable. However, as the Court has not reached the merits of Plaintiffs' constitutional claims, this dismissal is without prejudice.